IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MYRTHA GRANDIN<br>14 Fawn Hollow Rd.<br>Burlington, NJ 08016 | CIVIL ACTION |
| Plaintiff, | DOCKET NO.: |
| v. | |
| MASONIC CHARITY FOUNDATION<br>OF NEW JERSEY<br>d/b/a Masonic Village at Burlington<br>902 Jacksonville Road<br>Burlington, NJ 08016 | **JURY TRIAL DEMANDED** |
| Defendant. | |

## CIVIL ACTION COMPLAINT

Plaintiff, Myrtha Grandin (*hereinafter* referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

### I. Introduction

1. Plaintiff has initiated this action to redress violations by Masonic Charity Foundation of New Jersey d/b/a Masonic Village at Burlington (*hereinafter* referred to as "Defendant" unless indicated otherwise) of the Americans with Disabilities Act ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et. seq.*), and the New Jersey Law Against Discrimination ("NJ LAD"). Plaintiff was unlawfully terminated by Defendant, and she suffered damages more fully described/sought herein.

### II. Jurisdiction and Venue

2. This Court may properly maintain jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over

Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co v. State of Washington, 326 U.S. 310 (1945) and its progeny.

3. This action is initiated pursuant to a federal law. The United States District Court for the District of New Jersey has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

4. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff exhausted her administrative remedies because she timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") and filed a lawsuit within ninety (90) days of receiving a right-to-sue letter and/or notices of case closure from the EEOC.

### III.    Parties

6. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7. Plaintiff is an adult who resides at the above-captioned address.

8. Defendant is a senior residential care facility based in Burlington, NJ that was founded in 1898 and does business as Masonic Village at Burlington.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

### IV.   Factual Background

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was employed with Defendant for approximately ten (10) years, from in or about October 2010 through in or about April 2020.

12. At all times during her employment with Defendant, Plaintiff worked as a Certified Nursing Assistant.

13. Throughout her tenure with Defendant, Plaintiff was a dedicated and hard-working employee who performed well.

14. At the time of her termination from Defendant in or about April of 2020 (discussed further *infra*), Plaintiff was directly supervised by Elaine Benedict (Nursing Supervisor)("Benedict.")

15. Plaintiff suffers from disabilities, including but not limited to hypertension and diabetes, which at times limits her ability to perform daily life activities, including but not limited to controlling her blood pressure, working, and performing manual tasks.

16. When flare-ups of Plaintiff's aforesaid health conditions occur, and if not addressed promptly, the conditions can be life threatening.

17. Despite her disabilities, Plaintiff was still able to perform the duties of her job well with Defendant; however, she did require reasonable accommodations at times.

18. For example, on or about April 1, 2020, after consulting with her physician, Plaintiff was placed out of work due to her disabilities for a timeframe of approximately 60 days (a reasonable accommodation).

19. Plaintiff apprised Defendant's management and human resources personnel of her health conditions and need for leave, including but not limited to Cheryl Morris (Director of Human Resources)("Morris"), further providing them with medical documentation supporting the same.

20. Ultimately, in response to Plaintiff's request for a reasonable accommodation in the form of a leave of absence, however, Defendant flatly denied Plaintiff's request, without any engagement in the interactive process.

21. Specifically, Defendant informed Plaintiff that she only had two options; 1) immediately come back to work in a unit treating individuals with COVID-19, a disease which would place Plaintiff at considerable risk of death due to her aforesaid disabilities, without consideration or discussion as to how her disabilities would be adequately protected (i.e. assurance of adequate protective gear, sanitizing, protocols, etc.), which Plaintiff would have considered; or 2) be considered to have voluntarily resigned.

22. When Plaintiff attempted to further discuss her doctor's recommendations and concerns pertaining to the exacerbation of her disabilities with Defendant, Defendant made it exceedingly obvious that it had no intention of engaging in any interactive process with Plaintiff, with Morris informing her that "it doesn't matter what your doctor said or what is going on" and that it "doesn't matter what a doctor's note has on it."

23. Furthermore, despite being aware of her serious health condition and her need for medical leave, Defendant did not properly inform Plaintiff of her individualized FMLA rights or

designate such leave as FMLA; thus, Defendant failed to follow proper notice, designation, and informational regulations of the FMLA.

24. In close proximity to Defendant's aforementioned refusal to engage in the interactive process despite Plaintiff's attempts to do so, Plaintiff was then sent a letter, dated April 29, 2020, stating "you have resigned from your position . . . effective April 22, 2020," despite that Plaintiff had previously made it clear to Defendant that she had no intention of resigning from her employment.

25. However Defendant elects to characterize Plaintiff's termination, it was discriminatory, retaliatory, and exhibited a complete failure to provide a very reasonable accommodation under the ADA and NJ LAD. [1]

26. Based on the foregoing, Plaintiff believes and avers that she was terminated from her employment with Defendant in violation of the ADA and NJ LAD.

**First Cause of Action**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate)**

27. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

28. Plaintiff suffered from qualifying health conditions under the ADA, which (at times) affected her ability to perform some daily life activities – as discussed *supra*.

29. Plaintiff apprised Defendant's management of her aforesaid health conditions and requested the reasonable accommodation of an approximate 60-day medical leave of absence.

---

[1] Defendant's termination of Plaintiff was also part of a larger pattern of terminating employees with health problems without any attempt to accommodate their disabilities. For example, at least one other employee was terminated in or about April of 2020, following her requests for and utilization of a medical leave to care for her disabilities. *See Marcel v. Masonic Charity Foundation of New Jersey*, Docket No. 1:20-cv-08010-RBK-AMD (DNJ 2020), at Docket Entry No. 1.

30. Rather than accommodate her aforesaid disabilities, Defendant completely refused to engage in the interactive process and instead terminated Plaintiff, despite inexplicably characterizing her termination as a "resignation."

31. Plaintiff believes and therefore avers that she was terminated from her employment with Defendant because of: (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested reasonable medical accommodations – which constitutes unlawful retaliation; and/or (4) Defendant's refusal to engage in the interactive process with Plaintiff and/or accommodate her disabilities.

32. These actions as aforesaid constitute violations of the ADA.

## Second Cause of Action
### Violations of the New Jersey Law Against Discrimination ("NJ LAD")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate)

33. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

34. Plaintiff suffered from qualifying health conditions under the NJ LAD, which (at times) affected her ability to perform some daily life activities – as discussed *supra*.

35. Plaintiff apprised Defendant's management of her aforesaid health conditions and requested the reasonable accommodation of an approximate 60-day medical leave of absence.

36. Rather than accommodate her aforesaid disabilities, Defendant completely refused to engage in the interactive process and instead terminated Plaintiff, despite inexplicably characterizing her termination as a "resignation."

37. Plaintiff believes and therefore avers that she was terminated from her employment with Defendant because of: (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested reasonable medical accommodations – which constitutes unlawful

retaliation; and/or (4) Defendant's refusal to engage in the interactive process with Plaintiff and/or accommodate her disabilities.

38. These actions as aforesaid constitute violations of the NJ LAD.

### Third Cause of Action
### Violations of the Family and Medical Leave Act ("FMLA")
(Interference & Retaliation)

39. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

41. Plaintiff requested leave from Defendant, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

42. Plaintiff had at least 1,250 hours of service with the Defendant during her last full year of employment (preceding her request for FMLA-qualifying leave).

43. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

44. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

45. Defendant committed interference and retaliation violations of the FMLA by *inter alia*: (1) considering Plaintiff's FMLA needs in making the decision to terminate her; (2) terminating Plaintiff's employment in retaliation for requesting and/or utilizing FMLA-qualifying leave; (3) terminating Plaintiff while she was still on an FMLA-qualifying leave (and thus failing to reinstate Plaintiff to the same or similar position upon her release from an FMLA-qualifying leave); (4) terminating Plaintiff as a way to prevent her from utilizing FMLA-qualifying leave in

the future; and (5) failing to follow proper notice, designation, and informational regulations of the FMLA

46. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination/retaliation at the hands of Defendant until the date of verdict;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including but not limited to, emotional distress and/or pain and suffering damages (where legally permitted);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable state and federal law;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of any caps on certain damages set forth in applicable state and federal law; and

G.      Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: October 25, 2020